ELLIS, Judge.
Plaintiff, Service Fire Insurance Company of New York, brought this tort action against the defendant, John S. Bellish, under a subrogation claim as the insurer of an automobile involved in a collision with the defendant’s vehicle. The insured vehicle was owned by Mrs. Clyde W. Valentine and was being driven by an employee of the Capitol Nash Co., one Willie Scott, while the defendant’s car was being driven by him. A collision occurred about 4:00 P.M. on June 13, 1952 on Chippewa Street, in the Parish of East Baton Rouge. This street, *123 at the scene of the accident, is graveled. The Valentine car was proceeding in a westerly direction, while the Bellish vehicle was proceeding in an easterly direction, when a collision occurred, the left front of each car meeting head-on. The damages incurred by the Valentine car were alleged to be $748.38, but the amount sued for is $698.38 since the owner of the Valentine car was not a party to this action, and there was the usual $50 deductible clause in the policy of insurance issued by the plaintiff covering the vehicle.
The subrogation and loan receipt were admitted in evidence under stipulation by counsel, and it was admitted the plaintiff paid the amount sued for to have the Valentine car repaired.
The plaintiff alleges the accident occurred in the north lane of traffic, while the defendant claims the accident occurred in the south lane of traffic.
The case was tried and judgment rendered in the District Court in favor of the plaintiff as prayed for, and from this judgment the defendant has appealed.
Immediately after the accident two police officers investigated it, and their testimony, as well as the accident reports madé at the time of the investigation by them, show the point of impact occurred some four paces south of the north curb or ditch lin’e of Chippewa Street and 7 paces north of the south curb or ditch line of this street. Although there had been some changes made in the width of the road due to grading and graveling since the date of the accident, the reports and the testimony referred to indicate that the street at the point of collision was 33 feet wide. Both officers testified that they found sufficient evidence to determine the point of impact and collision to be in the north lane of traffic and on the north side of a manhole, which was located about 12 feet from the south curb and about 22 feet from the north curb, and which projected above the level of the street at least one foot and presented a hazard to traffic.
Both the officers mentioned testified there was ample room for eastbound traffic to pass to the south of the manhole, and in fact, one of the officers, while the automobiles were still blocking the north lane, directed eastbound traffic around the south side of this manhole. The evidence further discloses there were physical signs to show the south lane of traffic was generally used to go around the manhole.
The officers’ testimony, as well as that of other witnesses, indicates the Bellish automobile, . at the point of impact, was some two or three feet north, of the manhole, and the Valentine car was almost at the north edge of the street, although no part of it was in the ditch located there.
According to the testimony of the police officers the center line of the street would be approximately 16Y2 feet from either the northern or southern curb or ditch line, and their testimony places the point of impact at some 4% feet north of the center line of the street.
A Mr. Harper, one of the witnesses for the plaintiff, testified he was riding on the back seat of the Valentine car at the time of the accident, and he stated the Bellish car was approaching the manhole in its right 6r southern' lane of traffic and when it reached a point about 15 or 20 feet from the manhole it cut abruptly to its left into the northern lane of traffic, directly into the path of the Valentine automobile, and that the point of collision was entirely within the northern lane of traffic. This witness further stated the driver of the Valentine car had no opportunity to avoid a collision, although he applied his brakes immediately when the Bellish car cut into his lane of traffic, and pulled to his right toward the curb or ditch line. This gentleman stated further that the Valentine vehicle, immediately subsequent to the accident, was directly opposite the manhole with its right rear wheel within a foot or so of the northern curb line of the street, and that the Bellish car was between the Nash car and the manhole, standing1 partially in the north lane, although part of the automobile was in the southern' lane.
Willie Scott, the driver of the Valentine car, testified he was driving at a speed of *124 approximately 20 miles per hour, traveling in his right lane of traffic, and that the first time he saw the Bellish car it was three or four car lengths a\Vay, approaching toward the east in the right or southern lane of the street; that when it got approximately one car length away it suddenly swerved to its left to go around the manhole, and that this car struck the car he was driving in the north lane of traffic, even though he attempted to avoid the accident by applying the brakes and pulling as far to the right as he could.
The defendant, Bellish, testified that before he reached the point where the man hole was located he began to debate in his own mind what he was going to do when he *^ot to the manhole; whether he would go to the left or the right. He later stated he did not think about it until it actually came into sight, but still later he denied this and stated again he was contemplating what course of action he would take when he got there. This witness corroborated the testimony of the police officers by stating that the Valentine automobile was in a position almost directly opposite the manhole with its right rear wheel within a foot or so of the northern curb line of the street, and that the Bellish car was between the Valentine car and the manhole, standing partially in the northern lane and 'partially in the southern lane.
Aside from the defendant himself, only two other witnesses were called by him, Mr. Gauthier and Mr. Alfeiri, both of whom were passengers in the Bellish automobile, Gauthier seated upon the rear seat and Alfeiri on the front seat beside the. driver. Gauthier stated he was riding on the back seat and was not paying close attention as he was .not driving. He did not see the Valentine car before the accident, and stated the Bellish automobile was straddling the manhole after the impact. He did not know how high the manhole projected from the surface of the street, and by his own testimony, he was “dazed” after the accident and did not take any particular notice of the manhole or the relative positions of the automobiles. His testimony threw no light upon how or why the accident occurred.
Mr. Alfeiri testified the Bellish automobile was traveling in the right lane of traffic toward the east; that he saw the Valentine automobile when it was about ISO feet away, and that Bellish made n'o attempt to go around the manhole to the left or to the right; that after the accident the manhole was approximately in the center of the front of the Bellish car. He did not recall whether the Bellish automobile passed over the manhole nor did he know whether the Bellish car turned to the left or the right of the manhole, and he stated the accident happened so fast he could not see what was happening. This witness did positively testify that usually, eastbound traffic went to the right or south-side of the manhole, and the street had been enlarged there by traffic going around the south end of the manhole to avoid hitting it. However, he did not know which side of the .manhole the Bellish car attempted to go around immediately prior to the accident, but he did state the Bellish car was traveling in the middle of the road, and that consequently the Bellish car was approaching the manhole so that its right wheel would cross immediately over the top of the manhole. He places the Bellish car immediately prior to the accident as being partly in the north lane of the street and partly in the south lane, placing about half of the Bellish automobile in the north lane.
Of the seven witnesses who testified four stated the accident and point of collision occurred within the north lane of the street,, the two witnesses for the defendant stating they did not know much about the details of the accident and the defendant himself placing the right front wheel of' his car at the moment of the accident either upon or in line with the manhole. This would make his left front wheel extended some five feet or more north of the manhole.
From all of the testimony it can be concluded the accident occurred in the north or westbound traffic lane of the street some four and a half feet north of its *125 center line. Considering the testimony of the defendant, Bellish, along with the testimony of the other witnesses, it can he concluded that immediately prior to the accident he attempted to turn to his left and pass around the northern side of the manhole just as the Valentine car was about to reach a point when this maneuver was unsafe and negligent. In turning his car from the southern traffic lane into the northern lane he put it directly in the path of the on-coming Valentine car, and although the driver of the Valentine car did all he could under the circumstances, a collision resulted. Mr. Bellish knew the location of the manhole and its hazard to traffic, and was guilty of negligence in making the maneuver he did. The driver of the Valentine automobile was guilty of no contributory negligence, and consequently we conclude the approximate cause of the accident to have been the sole negligence of the defendant.
Judgment affirmed.