REID, Judge.
This is an action brought by John E. Al-leman against Gary K. Patterson and his in *157 surer, American Home Assurance Company, for injuries allegedly sustained by the plaintiff in an accident which occurred on the grounds of Humble Oil & Refining Company in Baton Rouge, Louisiana, on the afternoon of January 4, 1962.
Humble Oil & Refining Company filed a petition of intervention alleging it had paid workmen’s compensation to plaintiff in the amount of $1697.15 and had paid medical expenses on behalf of plaintiff in the amount of $427.00. This intervention was recognized by stipulation of all counsel.
For written reasons assigned the Trial Judge rendered judgment in favor of the plaintiff, John E. Alleman, in the sum of $10,285.00 and taxed as cost the expert fees of Dr. Thomas Campanella, Dr. D. V. Caci-oppo, Dr. Charles A. Feigley, Dr. David S. Malen, and Dr. Joseph M. Edelman, each in the amount of $50.00, and ordered the intervention of Humble Oil & Refining Company, for $427.00 medical expenses and $1697.15 compensation paid, be recognized. Judgment was signed May 5, 1964. The total award to the plaintiff of $10,285.00 was made subject to a credit in favor of Humble Oil & Refining in the amount of $2124.15. It is from this judgment that this appeal has been taken.
The fact show that the accident happened on the grounds of Humble Oil & Refining Company in Baton Rouge, Lousiana; that the plaintiff was driving a motor scooter owned by his employer, Humble Oil & Refining Company in a northerly direction on Avenue E, a thirty foot thoroughfare running in a northerly and southerly direction, and that the defendant Gary K. Patterson was leaving the north parking lot of the Esso Laboratory Building located to the east of said Avenue E and was heading in a southwesterly direction into Avenue E preparatory to making a left turn onto Avenue E. The facts further show that the plaintiff was following a pickup truck headed north on Avenue E and at the time of the accident there was another vehicle traveling south on Avenue E approximately 150 yards north of the scene of the accident. The record further discloses that the defendant Patterson left the parking lot, brought his vehicle to a stop at the exit of the parking lot to enable the pickup truck preceding plaintiff to pass, and then pulled out into Avenue E. With the front of his vehicle being approximately five to six feet into tlie intersection he came to a stop or almost stop in the path of the plaintiff’s motor scooter. The right front of the scooter hit the left front of the Buick and the resulting impact threw plaintiff over the top of the Buick car causing him to land on the pavement. Plaintiff testified he was following the pickup truck at a speed of approximately 15 miles an hour and at a distance of 20 to 30 yards behind the pickup. The speed of Mr. Alleman was corroborated by Mr. Jasper P. Loupe, also an employee of Humble Oil who was standing approximately 90 feet from the point of impact. Mr. Albert T. Furr, Jr., testified he was driving a vehicle in a southerly direction on Avenue E and was approximately 150 yards away from the scene of the accident. He testified that when he saw Patterson’s Buick had pulled a few feet forward and had stopped he could see the scooter coming and knew an impact was imminent. He estimated the vehicles were 10 to 15 feet apart when he saw the accident was going to occur, thus giving credence to plaintiff’s position that he was closely following the pickup truck.
The position of the plaintiff is that the defendant caused a sudden emergency when he pulled directly into the path of oncoming traffic and that said emergency was so sudden as not to permit Mr. Alleman time to react nor to permit him to avoid the accident by stopping.
The position of the defendants is that the accident occurred solely and only because plaintiff was not observing the road ahead, was not keeping a proper lookout, and if he had been keeping a proper lookout he could have avoided the accident when he saw defendant’s car enter the intersection. Defendants also contend the Trial *158 Court was in error in failing to hold that plaintiff was guilty of contributory negligence and not entitled to recover.
The Trial Judge in discussing the question of negligence in his well written reasons for judgment stated as follows:
“The facts in this case are undisputed with a few exceptions which will he noted hereinafter, and they will not be detailed. It should be noted at the outset that as a result of the accident plaintiff suffered a loss of memory as to occurrences immediately before and for some days following the accident. During the course of his testimony it appeared that he is still uncertain about some facts.
“Counsel for defendant has emphasized that the testimony of plaintiiff is that he never saw defendant’s automobile. I cannot agree with this contention. In his deposition taken on July 11, 1963 several months prior to to the trial, which deposition was offered in evidence by counsel for defendant, he was asked the following ■question and gave the following answer, as shown on page 13, lines 7, 8, 9 and 10:
“Q: Well, in any event, as I understand it, it is your testimony you didn’t see this car until you hit it?
“A: I didn’t see the car until bam, it was right there. It was just a big surprise, let’s put it that way.”
“I am satisfied from the evidence that defendant waited at the exit of the private parking lot, which is on the east side of Avenue E, the main thoroughfare, until a pickup truck proceeding north had passed this exit; that he then proceeded to enter the avenue and make a left turn so that he might travel south on the avenue. Plaintiff testified that he was following the pickup truck at a distance of some 20 to 30 yards, and that he was traveling approximately IS miles per hour. Defendant testified that when he first saw plaintiff the latter was about 40 feet away; that he then applied his brakes and stopped his car. The evidence shows that he had gone at least six feet into the north bound lane on which plaintiff was traveling on his motor scooter. A disinterested witness, Albert T. Furr, Jr., was traveling south on the avenue and was about ISO yards from the point where the collision occurred at the time of the occurrence. He testified that when he realized a collision was imminent, the plaintiff’s scooter was some 10 or IS feet from defendant’s automobile. He also testified that plaintiff appeared to veer toward his left immediately prior to the collision. This opinion is corroborated by the damage shown on the motor scooter.
“It is defendant’s contention that plaintiff was grossly negligent. He does not concede that defendant was negligent, but, considering the facts here, I am satisfied that defendant’s negligence has been clearly shown. For this reason consideration will be given to the plea of contributory negligence on the part of plaintiiff.
“Defendant has cited a number of decisions of our appellate courts, beginning with Baker v. State, La.App., 67 So.2d 123, and ending with Smith v. Borchers, 243 La. 746, 146 So.2d 793. With the exception of the case of Dyck v. Maddry, La.App., 81 So.2d 165, which involved a rear end collision, all of the cited cases deal with intersectional collisions, and defendant urges the pronouncements in these cases in support of his contention that plaintiff was negligent in that he failed to keep a proper lookout and to see what he could have seen.
*159 “In answer to this contention of defendant, plaintiff has cited the case of Holland v. United States Fidelity and Casualty Co., La.App., 131 So.2d 574, which deals with a collision between an automobile entering a public highway from a private driveway. It clearly distinguishes the duty of a motorist entering from an intersecting street or highway. The case holds that such motorist is under a duty to exercise extreme care and to yield the right-of-way to all vehicles approaching on the street. It further holds that the motorist on the main thoroughfare could assume that his travel would not be impeded by someone attempting to enter the street in front of him from a private driveway. * * *
“Defendant has vigorously contended that plaintiff was keeping no lookout whatsoever. This contention is clearly negated by the testimony of plaintiff, who said that he was keeping a strict lookout ahead of him; that he was following the pickup truck, and that his years of experience in the use of the thoroughfare had impressed upon him the duty of keeping such lookout at the particular time of day on which this accident occurred, since it was the time when a great number of employees were leaving the plant.
“It is my opinion that the doctrine laid down in the Holland case, supra, is decisive of the question of contributory negligence on the part of plaintiff under the facts shown here. I conclude that the sole proximate cause of the collision was the negligence of the defendant.”
An examination of the record substantiates the finding of the Trial Court and certainly in a case such as this, involving purely a question of fact and the credibility of the witnesses, the Trial Court’s opinion should be given great weight and should not be reversed unless the record shows manifest error.
 The brief filed on behalf of defendants cites the cases mentioned by the Trial Court and while we have no argument with the findings in those cases we must point out that the majority of them deal with intersectional collisions where the burden placed upon the driver entering the intersection is not as heavy as that placed upon the driver entering a highway from a private driveway, such as is the case here. These cases also turn upon factual questions dissimilar from the factual questions-involved in this case. It is, therefore, the opinion of this Court that the Trial Judge was correct in holding the sole proximate cause of the accident was the negligence of the defendant.
As already mentioned, although the Trial' Judge stated in his reasons for judgment that $10,000.00 was a proper award for plaintiff’s pain, suffering and disability and' $285.00 for the cost of anticipated medical-surgery as estimated by Dr. Campanella,. and rendered judgment accordingly, he then ordered the $2124.15 to be reimbursed’ Humble Oil & Refining Company “be paid’ out of the sums recovered by plaintiff.”' There is no dispute as to the correctness of the amount of compensation paid or the award for medical expenses.
The record shows the plaintiff was: hospitalized for a period of 17 days, that he was unconscious or semi-conscious for 24 hours and irrational for approximately another 24 hours. There is no question but what plaintiff was disabled from working for the period from the date of the accident on January 4, 1962 until April 1, 1962.
Dr. D. V. Cacioppo, a surgeon of Baton Rouge, who saw the patient after the accident, testified as follows:
“* * * The injuries he had consisted of the following: A stellate laceration of the scalp in the left parietal area; a two inch laceration of the left forehead; a severe through and through laceration of the lower lip; a small laceration of the chin; a small *160 laceration of the right leg; and a contusion of the right forearm with a fracture of the radius and moderately severe cerebral concussion.”
He further testified there was a period of two weeks before surgery for a fracture of the right arm could be undertaken because plaintiff’s head injury did not warrant surgery until that time. He further testified there was minimum scarring. It was his opinion plaintiff’s condition was serious for a period of 48 hours and the patient’s injuries were painful and caused much discomfort.
Dr. Campanella, an orthopedic specialist who performed the open reduction of the fracture of plaintiff’s right arm, testified that on January 18, 1962 the plaintiff underwent surgery and in connection therewith an inch screw was inserted in plaintiff’s arm. He further testified that on January 23 the cast was trimmed, on January 29, 1962 the sutures were removed and a new cast applied, on February 13, 1962 the cast was again removed and reapplied, which treatment was repeated March 1, 1962. On March 30 the cast was removed, on April 27, 1962, due to considerable callus about the fracture site, the hand was immobilized with simple Ace bandages and when the patient was re-examined on June 8, 1962 the doctor felt the patient was well enough to play golf and to encourage the use of his shoulder. He further testified that as of the date of the trial, April 21, 1964, plaintiff had a 7% to 8% disability of the use of the right arm and in his opinion the screw might come out at any time or could be taken out, and that as of that date the arm was still tender to the touch. He further testified the removal of the screw would require general anesthesia and surgery at a cost of approximately $350.00 and that it would disable him from returning to work for approximately two weeks. The Doctor’s testimony was definite to the fact that the arm was still tender approximately two and one-fourth years after the date of the accident
In addition to the physical injuries the Trial Judge felt the most serious disability of the plaintiff arose from a mental and emotional disability which the Trial Judge found to be real, although gradually subsiding.
The record discloses plaintiff was examined by Dr. Feigley, a specialist in the field of psychiatry, twice during February of 1962. Dr. Feigley testified that when he examined the patient he was not orientated, that his right hand appeared to have a constant tremor and although he did not find any psychological problem, his evaluation did show some kind of brain distress and the recent nature of the accident, the plaintiff’s confusion, his bursting in on things, and his coarseness of behavior made him believe there was some bleeding under the skull and referred him to Dr. Edelman.
Dr. Edelman testified there was a slightly abnormal pattern in the EEG performed on the patient but the type of abnormality shown was not characteristic or diagnostic in any particular condition of the central nervous system but was seen sometimes following head injuries in patients or in patients who are tense and apprehensive.
Plaintiff was also seen by Dr. T. L. Son-iat, a neurosurgeon of New Orleans, whose report of March 31, 1962 was filed in the record and who stated in his Report that the plaintiff had suffered a cerebral contusion on January 4, 1962 and had been gradually and steadily improving since that time but at the time of the report was still impatient which was not characteristic of his pre-injury personality.
Both plaintiff and his wife testified as to plaintiff’s loss of memory, his headaches and his change in personality.
It is apparent the Trial Judge felt that although there was no conclusive evidence of any mental or psychological impairment, when all of the evidence was considered it was evident there was a personality change and lack of mental and emotional stability. It cannot be said the Trial Judge’s *161 finding in this regard was in error and certainly in view of the extent of the physical injuries sustained by plaintiff, the period of hospitalization, the disability, the condition of his arm and the evidence of emotional and mental impairment, it cannot be said that the award is excessive.
For the above and foregoing reasons the judgment of the Trial Court is affirmed.
Affirmed.